TOWNSHIP OF RADNOR, and Frank
P. Slattery, Jr., and Ashwood
Manor Civic Association

v.

RADNOR RECREATIONAL, LLC,
Enrico Partners, LP, and
Richard E. Caruso.

Radnor Recreational, LLC, Enrico
Partners, LP, and Richard E.
Caruso

v.

Township of Radnor, Radnor Township
Board of Commissioners, and Clinton
A. Stuntebeck, William Black, James
M. Pierce, Harry G. Mahoney, Lisa
Paolino–Adams, David Cannan, Wil-
liam A. Spingler, Ann–Michele Hig-
gins, and Enrique R. Hervada, in their
official capacities as past or present
members of the Radnor Township
Board of Commissioners.

Appeal of Frank P. Slattery, Jr.,
and Ashwood Manor Civic
Association.

Commonwealth Court of Pennsylvania.

Argued March 29, 2004.
Decided June 2, 2004.
Reargument Denied Aug. 5, 2004.

James J. Greenfield, Radnor, for appellants.

David R. Moffitt, Philadelphia, for appellees, Radnor Recreational, Enrico Partners and R. Caruso.

David G. Blake, Media, for appellee, Township of Radnor.

BEFORE: McGINLEY, Judge, LEAVITT, Judge, and MIRARCHI, Senior Judge.

OPINION BY Senior Judge MIRARCHI.

Frank P. Slattery, Jr. and Ashwood Manor Civic Association (collectively, Proposed Intervenors) appeal from the order of the Court of Common Pleas of Delaware County (the trial court) denying their petition to intervene in a lawsuit between the Township of Radnor (the Township) and Radnor Recreational, LLC, Enrico Partners, LP, and Richard Caruso (collectively, the Developers), after the parties to this suit and a countersuit had come to settlement. We affirm.

The trial court articulated the following facts. All parties in this matter, including the Proposed Intervenors, have been involved for many years in a bitter dispute concerning a property owned by the Developers located on Lancaster Pike, Route 30, in Radnor Township (the Property). The Property contains a restaurant, a skating rink, and other uses. Ashwood Manor is a residential community lying north of the Property, purportedly represented by Proposed Intervenor Ashwood Manor Civic Association (the Association), and in which Proposed Intervenor Frank P. Slattery, Jr. resides. In 1997, following an appeal from a zoning board decision, the Proposed Intervenors entered into a court-approved settlement agreement with

the Developers regarding the development of the east end of the Property.

The current dispute involves the Developers' plans to further develop both the western and eastern ends of the Property. Without providing detail, the trial court describes the dispute among the Developers, the Township, and the Proposed Intervenors as "fractious" resulting in legal actions by the Township against the Developers and a civil rights action by the Developers against the Township alleging that the Township improperly held up development. The Developers also filed defamation actions against the Proposed Intervenors. Ultimately, the Township and the Developers entered into a settlement agreement in 2003 that would allow the Developers to submit two plans for the development of the property. If the Township accepted one of the plans, the agreement provides that the Developers would discontinue their civil rights action against the Township. The Township Commissioners voted to adopt the settlement agreement in March 2003. On April 2, 2003, the trial court approved the settlement, retaining jurisdiction for resolution of any issues remaining under the agreement.

On April 21, 2003, the Proposed Intervenors petitioned the trial court to intervene in the case. An evidentiary hearing was held on the petition, and the trial court summarized the testimony as follows. William H. McCoy, II, a member of the Association, testified that he was long involved in Township affairs concerning land use and that he took a particular interest in the Property. He is also a defendant in the defamation action filed by the Developers. He testified that he had nearly daily interaction between himself and the Township employees and officials, and fellow Association members. He became aware of settlement negotiations between the Township and the Developers in October 2002, and was aware that any settlement would require approval by the trial court. Joseph McCabe, the Association president, testified that he opposed the proposed development of the Property and communicated this to the Township. He also knew of the settlement negotiations in October 2002. In fact, he was invited to participate, but he declined. Frank Slattery, a lawyer and past-president of the Association, testified that during the period before the settlement, he questioned whether the Township's solicitor was forcefully and effectively representing the Township citizens' interest and advising the Township. Slattery reviewed the proposed settlement agreement in January 2003, and concluded that it was "bizarre," further opining that he did not know which way the Township commissioners would vote on the settlement.

■ Based on this testimony, the trial court determined that the petition to intervene was untimely pursuant to Rule 2329 of the Pennsylvania Rules of Civil Procedure, Pa. R.C.P. No. 2329. The trial court first noted that the Proposed Intervenors were savvy and sophisticated parties, who had hired counsel to represent them during the 1997 legal dispute between the Township and the Developers because they did not trust the Township to fully represent their interests. Here, the court determined that the Proposed Intervenors were in constant contact with the Township regarding the current lawsuit, were aware of settlement negotiations many months before there was an agreement, and became aware of the provisions of the settlement agreement before it was adopted by the Township. They did not file to intervene, however, until after the Township Commissioners adopted the agreement and the trial court approved it. The trial court found that intervention at

this point would be prejudicial to the parties because of the delay, and therefore the intervention should be denied pursuant to Pa. R.C.P. No. 2329(3). The trial court noted that the settlement effectively ended the civil rights action against the Township, helping all citizens, and further determined that because the Proposed Intervenors were aware that the Township's interests and their own were not identical, they should have acted sooner to protect their interests. Accordingly, the trial court denied the petition to intervene, and this appeal followed.[1]

Proposed Intervenors raise the following issues: (1) whether their appeal is an appealable collateral order pursuant to Pa. R.A.P. 313(b); and (2) whether they are entitled to intervene in the underlying lawsuit because the resolution of such lawsuit would directly affect their property rights as established by the 1997 settlement and when such lawsuit continued to remain open.

██ Initially, it must be established whether we may hear the appeal prior to an entry of a final order in the underlying action. An appeal of an order denying intervention may fall within the definition of an appealable collateral order pursuant to Pa. R.A.P. 313(b). *Larock v. Sugarloaf Township Zoning Hearing Board,* 740 A.2d 308 (Pa.Cmwlth.1999). Pa. R.A.P. 313(b) provides that an order separable from and collateral to a main cause of action may be appealed when the right involved is too important to be denied review and the question presented is such that if review was postponed until the final judgment, the claim will be irreparably lost. In *Larock,* we noted that the criteria for determining whether an appeal falls within the definition of Rule 313(b) requires that the issues raised on appeal transcend the particular interests of the parties and involve rights deeply rooted in public policy. We further noted, however, that public policy rights include those rights of landowners seeking to protect their interests in their homes. Thus, in *Larock,* we held that the property interests of intervening neighboring homeowners in a zoning matter were too important to be denied review, and that the claimed property rights of such neighbors were separable from and collateral to the underlying action. We accordingly determined that the neighbors could appeal pursuant Pa. R.A.P. 313(b), despite the fact that the underlying action had not fully ended. Here, the interests of the Proposed Intervenors are arguably even greater than those typical of neighbors concerned about their property rights, in that the Proposed Intervenors have also established certain rights under the 1997 settlement that are allegedly threatened, and that they are also the defendants in defamation actions filed by the Developers in connection with events surrounding the proposed development of the Property. Further, it is clear that the alleged right of intervention of the Proposed Intervenors is separable from and collateral to the underlying action. Therefore, we will entertain their appeal under Pa. R.A.P. 313(b).[2]

---

1. This Court's scope of review of a trial court order disposing of a petition to intervene is whether the trial court abused its discretion or committed an error of law. *Acorn Development Corp. v. Zoning Hearing Board of Upper Merion Township,* 105 Pa.Cmwlth. 138, 523 A.2d 436 (1987).

2. The Developers argue that the stringent requirements of Pa. R.A.P. 313(b) require that we quash the appeal of the Proposed Intervenors because they have available another pathway to relief by simply filing an action for any alleged breach of the 1997 settlement. Indeed, the requirements to be satisfied for bringing an appeal under Pa. R.A.P. 313(b)

■ Next, we determine whether the trial court abused its discretion or erred by denying the Proposed Intervenors' petition to intervene. Petitions to intervene are governed by Pa. R.C.P. Nos. 2326–2350. Pa. R.C.P. No. 2327 sets forth four categories of persons who may intervene in an action, including persons who have "any legally enforceable interest" that may be affected by the outcome of the underlying action. Pa. R.C.P. No. 2327(4). We have long recognized that owners of property in the immediate vicinity of property involved in zoning litigation have the requisite interest to fit under the definition of Pa. R.C.P. No. 2327(4), and such property owners have grounds to intervene in the litigation. *Larock; Summit Township Taxpayers Ass'n v. Summit Township Board of Supervisors*, 49 Pa.Cmwlth. 459, 411 A.2d 1263 (1980). There is no question that the Proposed Intervenors have the requisite grounds to intervene in this action pursuant to Pa. R.C.P. No. 2327.

■ Notwithstanding, a party that falls within any of the categories set forth in Pa. R.C.P. No. 2327 may be refused intervention should the trial court determine that one of the circumstances set forth at Pa. R.C.P. No. 2329 is present. *Larock.* Pa. R.C.P. No. 2329 provides that an application for intervention may be refused when:

(1) the claim or defense of the petitioner is not in subordination to and in recognition of the propriety of the action; or
(2) the interest of the petitioner is already adequately represented; or
(3) the petitioner has unduly delayed in making application for intervention or the intervention will unduly delay, em-

barrass or prejudice the trial or the adjudication of the rights of the parties. A trial court's determination of whether an application for intervention may be denied pursuant to Pa. R.C.P. No. 2329 is discretionary. *Larock.*

■ Here, the trial court found that the Proposed Intervenors were sophisticated individuals who, despite being very interested in the outcome of the litigation, did nothing but monitor the proceedings even though they admitted that they did not trust the Township to support their interests. The court also found that they permitted the settlement to proceed towards its conclusion without attempting to intervene during that process, and now they desire to upset the efforts of the parties to the litigation to end their acrimonious dispute. The court determined that the intervention of the Proposed Intervenors at this late point would prejudice the Township, its citizens as a whole, and the Developers. The Developers would of course be prejudiced because of the delay in the development agreed upon in the settlement, and the Township citizens would be prejudiced because the civil rights action against the Township, with all of its potential cost to the Township, would be able to proceed should the intervention be granted.

Quite plainly, the record supports the trial court's findings. Further, it is equally clear that the trial court did not abuse its discretion in determining that the Proposed Intervenors unduly delayed the filing of their intervention petition when they sat by while observing matters up to the very point when the Township adopted a long-developing settlement agreement.

---

are to be narrowly construed. *Larock.* We are satisfied, however, that the Proposed Intervenors have also challenged several paragraphs of the current settlement between the Developers and the Township in their pro-

posed complaint, and therefore there are arguably rights that may be lost if we do not permit the appeal, subject, of course, to the Proposed Intervenors establishing their right to intervene.

Moreover, there can be no question that the grant of the intervention petition at this point, after the parties have essentially resolved their dispute, would be highly prejudicial to the parties.

The Proposed Intervenors argue, however, that the facts do not establish an undue delay in their application to intervene. They contend that their petition to intervene was filed only four weeks after the Township approved the settlement agreement, that prior to that time a Township official indicated to them that the Township would not consider any dramatic increase in development, and that the action was still pending at the time they petitioned to intervene. With regard to the latter point, they emphasize that the Developers still had a right to pursue their civil rights claim pending whether the Township accepted one of their plans. In making these arguments, however, the Proposed Intervenors are simply selecting portions from the evidence in an attempt to fashion an alternative scenario to the findings of the trial court. Although the Proposed Intervenors contend that the underlying action had not fully resolved, as the Township had yet to approve a development plan under the settlement agreement, they seemingly ignore the singular fact that the parties to the underlying action had arrived at an agreement that the Proposed Intervenors now wish to upset. The Proposed Intervenors also cannot rationally dispute the finding of the trial court that intervention at this point would prejudice the parties to the settlement, as well as Township residents generally.[3] The arguments of the Proposed Intervenors do not in any way establish that the trial court abused its discretion by denying intervention under Pa. R.C.P. No. 2329(3) under the facts of this case.

The Proposed Intervenors further cite *Keener v. Zoning Hearing Board of Mill-creek Township*, 714 A.2d 1120 (Pa. Cmwlth.1998), as supportive of their position that the trial court abused its discretion by denying intervention. In *Keener*, we held that a trial court abused its discretion by dismissing an intervening neighbor in a zoning dispute after the original parties to the action came to a settlement agreement. *Keener* is distinguishable from the present case in a great many respects, however. First, there was no issue regarding the timeliness of the neighbor's intervention. Indeed, the neighbor had intervened in the dispute at both the zoning hearing board and the trial court levels. The trial court *dismissed* the neighbor as an intervening party upon the motion of a party after the neighbor had sold its property while retaining a purchase money mortgage on the property. We determined that the "neighbor's" status as a lien holder of the property gave it status to intervene pursuant to Pa. R.C.P. No. 2327(4). We further held the neighbor should not be dismissed as Intervenor under Pa. R.C.P. No. 2329(2) on the grounds that the township represented its interest in the underlying action, as the facts of the case established that the township no longer represented the neighbor's interests in the litigation as evidenced by the terms of the settlement agreement. The Proposed Intervenors in the present case may be correct that the Township does not represent their interests as evidenced by its adoption of the settlement agreement. The Proposed Intervenors, however, were

---

3. We would further note that the Developers assert in their brief that the trial court entered an order on October 1, 2003 accepting one of the Developer's plans for the development of the Property. They further assert that on October 7, 2003, Radnor Recreational, LLC formally settled, discontinued, and ended its counterclaims. Thus, it would appear that the lawsuit between the parties is now finally and fully settled.

aware of the settlement negotiations and terms long before their adoption by the Township and the trial court, and nothing in *Keener* disturbs the conclusion that the trial court did not abuse its discretion by denying intervention pursuant to Pa. R.C.P. No. 2329(3).

■ We must also note that we have held that the law favors settlements, and that we will not without extraordinary circumstances entertain collateral attacks on settlements when the proposed intervening party may have availed itself of the procedures of the litigation earlier. *Boeing Co. v. Zoning Hearing Board of Ridley Township*, 822 A.2d 153 (Pa.Cmwlth.2003); *Summit Township. See also Chairge v. Exeter Borough Zoning Hearing Board*, 151 Pa.Cmwlth. 220, 616 A.2d 1057 (1992), *petition for allowance of appeal denied*, 536 Pa. 632, 637 A.2d 292 (1993) (extraordinary circumstances must be shown in order to justify an untimely petition to intervene).

For the above reasons, the trial court's order is affirmed.

### ORDER

AND NOW, this 2nd day of June, 2004, the order of the Court of Common Pleas of Delaware County in the above-captioned matter is hereby affirmed.