IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Wexford Science and Technology, LLC :
:
v. : No. 694 C.D. 2020
: Argued: May 10, 2021
The City of Pittsburgh Zoning Board of :
Adjustment :
:
Appeal of: Coltart Area Residents :
Association, South Oakland :
Neighborhood Group, Oakliffe :
Community Organization, :
Marjory Lake, Mark Oleniacz and :
Elena Zaitsoff :

BEFORE:  HONORABLE RENÉE COHN JUBELIRER, Judge
HONORABLE MARY HANNAH LEAVITT, Judge
HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION
BY JUDGE LEAVITT                                                    FILED: July 23, 2021

Coltart Area Residents Association, Oakliffe Community Organization, South Oakland Neighborhood Group (Proposed Neighborhood Association Intervenors), and Marjory Lake, Mark Oleniacz, and Elena Zaitsoff (Proposed Individual Intervenors) (collectively, Proposed Intervenors) have appealed an order of the Court of Common Pleas of Allegheny County (trial court) that denied their petition to intervene in the zoning appeal of Wexford Science and Technology, LLC (Developer). There are two issues before this Court: (1) whether the trial court's denial of Proposed Intervenors' intervention petition is an appealable collateral order under Pennsylvania Rule of Appellate Procedure 313, PA. R.A.P. 313, and (2) whether the trial court erred in denying the petition to intervene under Pennsylvania Rule of Civil Procedure 2329, PA. R.C.P. No. 2329. Upon review, we deny Developer's motion to quash the appeal. We further vacate the trial court's order

denying the petition to intervene and remand the matter to the trial court for an evidentiary hearing on the petition to intervene.

## Background

Developer owns three lots on Forbes Avenue (Property) located in the Oakland Public Realm Subdistrict-C Zoning District (OPR-C District) in the City of Pittsburgh. Developer proposes to demolish the existing 2-story building and construct a 13-story, 188.6-foot-tall building, with 9 floors of office and laboratory space, 3 floors of parking and 1 floor of retail uses on the ground floor (Project). The City Zoning Code[1] limits building height to 85 feet and regulates the ratio of building floor size to lot size in the OPR-C District. Because its Project did not meet the Zoning Code's dimensional requirements, Developer applied to the City Zoning Board of Adjustment (Zoning Board) for a variance as well as for a special exception.

Several neighbors and neighborhood associations intervened and presented testimony at the hearing before the Zoning Board. These included the Oakland Planning & Development Corporation (Oakland Planning Corporation), a registered community organization,[2] and Proposed Intervenors. Proposed Individual Intervenors intervened in their own right and as representatives of the Proposed

---

[1] ZONING CODE OF THE CITY OF PITTSBURGH, PA., §§901.01-1005.10 (1998).

[2] Section 178E.02 of the City's Registered Community Organizations Ordinance defines a "community organization" as

> [a] voluntary group of individuals organized around a particular community interest or geographic area for the purpose of collectively addressing issues and interests common to that group. A community organization is not a subsidiary of the City of Pittsburgh government.

PITTSBURGH, PA., REGISTERED COMMUNITY ORGANIZATIONS ORDINANCE §178E.02 (2018). The Department of City Planning is required to maintain an official registration of community organizations recognized under the Ordinance. *Id*. §178E.04.

Neighborhood Association Intervenors. After the hearing, the Zoning Board denied Developer's request for a variance and special exception.

On November 22, 2019, Developer appealed to the trial court. Developer served Proposed Intervenors and all parties that participated in the Zoning Board hearing. The City intervened as of right. On December 30, 2019, the Oakland Planning Corporation petitioned to intervene in the appeal, and the trial court granted its petition. On January 28, 2020, the parties that participated in the Zoning Board hearing attended a status conference with the trial court. Thereafter, on February 12, 2020, they attended a settlement conference convened by City Councilman Bruce Kraus.

On April 10, 2020, Proposed Intervenors petitioned to intervene in Developer's land use appeal. The petition averred that Proposed Intervenors learned from a newspaper article published on April 8, 2020, that the Oakland Planning Corporation was "backing a settlement deal" through which it would receive $500,000 from Developer. Certified Record (C.R.), Item 12, at 3, ¶7. Given this about-face by the Oakland Planning Corporation, Proposed Intervenors asserted that it no longer represented their interests. Their petition further averred that the City's position on the settlement proposal was "unknown" because the City's solicitor refused to state the City's position. *Id*. at 4-5, ¶¶10-11. Proposed Intervenors petitioned to intervene in order to defend the decision of the Zoning Board.

Developer opposed their intervention petition. Developer acknowledged that it was engaged in settlement negotiations with the Oakland Planning Corporation. It asserted, however, that Proposed Intervenors' interests continued to be fully represented by the Oakland Planning Corporation, which was affiliated with all Proposed Neighborhood Association Intervenors. Developer

3

argued that it did not follow from Proposed Intervenors' disagreement with the litigation decisions of Oakland Planning Corporation that the Oakland Planning Corporation no longer represented the interests of Proposed Intervenors.

The trial court heard oral argument. Proposed Intervenors argued that the Project would adversely impact their homes and the neighborhood. They argued that Developer's proposal for 155 automobile parking spaces and 61 bicycle parking spaces in its 3-story garage was inadequate for the 700 occupants of the building. They also argued that on-street parking in the neighborhood has been oversubscribed and cannot accommodate "a project of this magnitude." Hearing Transcript, 6/9/2020, at 9, 11. Proposed Intervenors had believed that the Oakland Planning Corporation and the City would "vigorously defend" the decision of the Zoning Board and were surprised when Developer "cut a deal" with the Oakland Planning Corporation. *Id*. at 14, 16.

Developer countered that Proposed Intervenors were informed of the existence and substance of the settlement negotiations; waited too long to intervene; and were fully represented by the Oakland Planning Corporation, the only registered community organization to intervene timely in Developer's land use appeal.

**Trial Court Decision**

By order of June 10, 2020, the trial court denied Proposed Intervenors' petition to intervene. Proposed Intervenors appealed to this Court. In its Rule 1925(a) opinion, PA. R.A.P. 1925(a), the trial court reasoned that Proposed Intervenors were served with notice of Developer's zoning appeal, and some of them attended the settlement conference on February 12, 2020. However, they unduly delayed the filing of an intervention petition until April 10, 2020, more than five months after the filing of Developer's land use appeal. To allow intervention at that

4

point would be prejudicial because those parties that had promptly intervened in Developer's land use appeal were close to a settlement. The trial court also concluded that Proposed Intervenors' interests were fully represented by the Oakland Planning Corporation, which is the only registered community organization for the neighborhood.

While Proposed Intervenors' appeal of the trial court's denial of intervention was pending, Developer, the Oakland Planning Corporation, and the City entered into a settlement, in which Developer agreed to reduce the height of the Project to 153 feet, and the Oakland Planning Corporation and the City agreed to withdraw their appeals. On January 4, 2021, the trial court approved a consent order modifying the Zoning Board's decision to reduce the height of the building to 153 feet and subjecting the Project to comply with all other requirements of the Zoning Code. The trial court marked the underlying zoning appeal "[s]ettled and [d]iscontinued." Trial Court Consent Order, 1/4/2021, at 2; Supplemental Certified Record (S.C.R.), Item 2 at 2.

## Appeal

On appeal,[3] Proposed Intervenors present three issues for review, which we combine into two for clarity. First, they argue that the trial court's interlocutory order denying their intervention petition is appealable as a collateral order under PA. R.A.P. 313. Second, they argue that the trial court abused its discretion in denying their intervention petition under PA. R.C.P. No. 2329.

Developer filed a motion to quash Proposed Intervenors' appeal for lack of jurisdiction, asserting that the trial court's interlocutory order is not

---

[3] "Our review of the denial of a petition to intervene is limited to determining whether the trial court abused its discretion or committed an error of law." *Pendle Hill v. Zoning Hearing Board of Nether Providence Township*, 134 A.3d 1187, 1193 n.5 (Pa. Cmwlth. 2016).

5

appealable. This Court ordered the parties to address Developer's motion to quash in their briefs on the merits of Proposed Intervenors' appeal.

## I. Collateral Order

Proposed Intervenors argue that the trial court's order denying their petition to intervene is appealable as a collateral order under PA. R.A.P. 313. The intervention issue is separable from the main cause of action, *i.e.*, Developer's land use appeal. Further, the land use rights at issue are too important to be denied review because the Project is incompatible with their residential neighborhood. In support, they cite *Larock v. Sugarloaf Township Zoning Hearing Board*, 740 A.2d 308 (Pa. Cmwlth. 1999). Proposed Intervenors contend that without this Court's immediate review of the trial court's order, their rights will be irreparably lost.

Developer counters that the property rights identified by Proposed Intervenors may give them standing, but they do not constitute rights too important to escape review. Even so, Proposed Intervenors' rights have been fairly represented by the Oakland Planning Corporation, which Proposed Intervenors selected to act on their behalf and whose boundaries "not only include the Project, but also all of the [n]eighborhood [g]roups and [i]ndividual residences" at issue. Developer Brief at 15. Developer argues that Proposed Intervenors' reliance on *Larock* is misplaced because Developer did not seek a use variance, as was the case in *Larock*, but, rather, a dimensional variance. Developer contends that neither the height of a building nor adequacy of on-street parking implicates rights deeply rooted in public policy.

We begin with a review of Pennsylvania Rule of Appellate Procedure 313, which provides:

> (a) General rule.--An appeal may be taken as of right from a collateral order of a trial court or other government unit.

6

(b) Definition.--A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

PA. R.A.P. 313. This Court has explained that the three-prong requirements for allowing "an appeal under the collateral order doctrine are stringent and must be narrowly construed." *Larock,* 740 A.2d at 312. Here, it is undisputed that Proposed Intervenors' petition to intervene is a matter separable from the underlying zoning matter. This leaves the other two prongs.

The second prong concerns whether the right involved is "too important to be denied review." PA. R.A.P. 313(b). This Court has held that "the mere assertion of a right to intervene" does not constitute in itself a right "too important to be denied review." *Cogan v. County of Beaver*, 690 A.2d 763, 765 (Pa. Cmwlth. 1997). Our Supreme Court has further explained that

> [f]or purposes of defining an order as a collateral order under Rule 313, it is not sufficient that the issue be important to the particular parties. *Rather it must involve rights deeply rooted in public policy going beyond the particular litigation at hand*.

*Geniviva v. Frisk*, 725 A.2d 1209, 1213-14 (Pa. 1999) (emphasis added).

In *Larock*, 740 A.2d 308, the developer appealed the zoning board's denial of a use variance to operate a stone quarry. The trial court denied intervention to residents and associations that opposed the quarry. On appeal, this Court concluded that the trial court's order on intervention was appealable as a collateral order under PA. R.A.P. 313 because the property interests of the homeowners seeking to intervene were too important to be denied review. This Court stated:

7

Every person has the right to the natural, proper, and profitable use of his or her own land. *Implicit then is the right to protect one's property from harm, whether it be in the form of decreased valuation, insufficient water supply, excessive dust, noise, pollution, or some other cause*. Indeed, the Eminent Domain Code[4] provides for just compensation in instances where a condemnor causes a decrease in property value.

When the property at issue is someone's home, the owner's right to protect the viability of his property is even more personal. The purchase of a home is often considered to be one of, if not the, most significant investments an individual can make during his lifetime. *To deny an individual the right to protect his interest in the property he calls home would violate public policy*.

*Larock*, 740 A.2d at 312 (emphasis added and citation omitted).

As in *Larock*, Proposed Individual Intervenors include neighboring homeowners who seek to protect their interests in the properties they call home from harm in the form of increased traffic and insufficient parking. Developer asserts that Oleniacz and Zaitsoff do not own property near the Project; however, the Zoning Board found that they live within 0.5 miles of the Project. Zoning Board Decision at 7; Reproduced Record at 96a (R.R. __). *Larock* involved a use variance, not a dimensional variance. However, this does not change the analysis of whether the right to protect one's interest in a home is deeply rooted in public policy.

Developer relies upon *Township of Radnor v. Radnor Recreational, LLC*, 859 A.2d 1 (Pa. Cmwlth. 2004). In that case, this Court affirmed a denial of intervention in a land use appeal where the proposed intervenors delayed their request for intervention until after the trial court had approved the settlement between the township and the developer. Relevant hereto, this Court treated the trial

---

[4] 26 Pa. C.S. §§101-1106, repealing Act of June 22, 1964, P.L. 84, *as amended*, *formerly* 26 P.S. §§1-101–1-903.

8

court's denial of intervention as a collateral order because the proposed intervenors were seeking to protect their interests in their homes. *Id.* at 4. It is also relevant that in *Township of Radnor*, one of the proposed intervenors was a civic association that represented a community "lying north of the [proposed development]." *Id.* at 2. Developer's assertion that Proposed Neighborhood Association Intervenors' territorial boundaries must encompass the Project's location in order for them to establish a right too important to be denied review under PA. R.A.P. 313(b) lacks merit under *Township of Radnor*.

The third prong of the test for allowing an appeal under PA. R.A.P. 313 considers whether Proposed Intervenors' rights will be irreparably lost without this Court's review of the trial court's denial of their intervention petition. On January 4, 2021, the trial court approved a consent order modifying the Zoning Board's decision to allow a 153-foot-tall building and marked the case closed. Proposed Intervenors cannot appeal the consent order because they were not a party before the trial court. In short, the rights of Proposed Intervenors will be lost without this Court's immediate review.

For these reasons, we conclude that the trial court's order denying the intervention petition is an appealable collateral order under PA. R.A.P. 313.

## II. Intervention Petition

We turn to the merits of Proposed Intervenors' appeal. The trial court denied the intervention petition for two reasons: (i) the Oakland Planning Corporation adequately represented the interests of Proposed Intervenors, and (ii) Proposed Intervenors unduly delayed their request to intervene. PA. R.C.P. No. 2329(2)-(3). Proposed Intervenors argue that the trial court did so without an evidentiary record and, thus, abused its discretion. Developer had the burden to

9

establish grounds for the trial court to deny intervention under PA. R.C.P. No. 2329, and it failed to do so. Proposed Intervenors ask this Court to reverse the trial court based on the existing record.

> Pennsylvania Rule of Civil Procedure 2327 provides:
>
> *At any time during the pendency of an action*, *a person not a party thereto shall be permitted to intervene therein*, subject to these rules if
>
> (1) the entry of a judgment in such action or the satisfaction of such judgment will impose any liability upon such person to indemnify in whole or in part the party against whom judgment may be entered; or
>
> (2) such person is so situated as to be adversely affected by a distribution or other disposition of property in the custody of the court or of an officer thereof; or
>
> (3) such person could have joined as an original party in the action or could have been joined therein; or
>
> (4) *the determination of such action may affect any legally enforceable interest of such person whether or not such person may be bound by a judgment in the action*.

PA. R.C.P. No. 2327 (emphasis added). Pennsylvania Rule of Civil Procedure 2329 states as follows:

> Upon the filing of the petition and *after hearing*, of which due notice shall be given to all parties, the court, *if the allegations of the petition have been established and are found to be sufficient*, shall enter an order allowing intervention; *but an application for intervention may be refused*, *if*
>
> (1) the claim or defense of the petitioner is not in subordination to and in recognition of the propriety of the action; or
>
> (2) the interest of the petitioner is already adequately represented; or

10

(3)  the petitioner has unduly delayed in making application for *intervention or the intervention will unduly delay, embarrass or prejudice the trial or the adjudication of the rights of the parties.*

PA. R.C.P. No. 2329 (emphasis added).

In sum, a petition to intervene may be filed "at any time during the pendency of an action," and the grant is mandatory where the action may "affect any legally enforceable interest" of the petitioner.  PA. R.C.P. No. 2327.  However, an application "may be refused" in the specific circumstances set forth in PA. R.C.P. No. 2329.  In *Larock*, this Court explained the interplay of Rules 2327 and 2329 as follows:

> Considering Rules 2327 and 2329 together, the effect of Rule 2329 is that *if the petitioner is a person within one of the classes described in Rule 2327, the allowance of intervention is mandatory, not discretionary*, unless one of the grounds for refusal under Rule 2329 is present.  Equally, if the petitioner does not show himself to be within one of the four classes described in Rule 2327, intervention must be denied, irrespective of whether any of the grounds for refusal in Rule 2329 exist.  Thus, *the court is given the discretion to allow or to refuse intervention only where the petitioner falls within one of the classes enumerated in Rule 2327 and only where one of the grounds under Rule 2329 is present* which authorizes the refusal of intervention.

*Larock*, 740 A.2d at 313 (emphasis added and citations omitted).

Generally, the trial court conducts a hearing on a petition to intervene to allow the petitioner an opportunity to establish that the requirements for intervention have been met.  PA. R.C.P. No. 2329 (the trial court rules on intervention petition "[u]pon the filing of the petition and *after hearing*") (emphasis added).  *See also Hayes v. School District of Pittsburgh*, 381 A.2d 193 (Pa. Cmwlth. 1977).  A hearing may not be required, however, where it is apparent from the face

11

of the petition that the requirements for intervention have not been met. *SBA Towers IX, LLC v. Unity Township Zoning Hearing Board*, 179 A.3d 652, 664 (Pa. Cmwlth. 2018) (hearing not necessary where the record was sufficient to decide the petition to intervene); *Chairge v. Exeter Borough Zoning Hearing Board*, 616 A.2d 1057 (Pa. Cmwlth. 1992) (hearing not necessary where the petition to intervene was filed after entry of decree); *Santangelo Hauling, Inc. v. Montgomery County*, 479 A.2d 88 (Pa. Cmwlth. 1984) (hearing not necessary where the petition to intervene was filed one year after matter was adjudicated).

## A. "Legally Enforceable Interest"

Proposed Intervenors have established a "legally enforceable interest" under Rule 2327(4).[5]  Courts have long recognized that "[o]wners of property in the immediate vicinity of property involved in zoning litigation have the requisite interest and status to become intervenors under PA. R.C.P. No. 2327(4)." *Larock*, 740 A.2d at 313 (citing *Summit Township Taxpayers Association v. Summit Township Board of Supervisors*, 411 A.2d 1263, 1265 (Pa. Cmwlth. 1980)).

In *Larock*, we held that residents living in the immediate vicinity of the proposed quarry had a "legally enforceable interest" to become intervenors under PA. R.C.P. No. 2327(4).  *Larock,* 740 A.2d at 313.  By contrast, we denied intervention to an association "whose membership included residents of the townships and counties" near the quarry but not in the township or county where the quarry was located.  *Id.*  Further, the association's members did not own property in the vicinity of the proposed quarry.  In so concluding, this Court relied upon *Acorn*

---

[5] Developer does not contest Proposed Intervenors' petition under PA. R.C.P. No. 2327(4). Likewise, the trial court's 1925(a) opinion did not address Rule 2327.

*Development Corporation v. Zoning Hearing Board of Upper Merion Township*, 523 A.2d 436 (Pa. Cmwlth. 1987).

In *Acorn Development Corporation*, we held that a township committee did not have an interest sufficient to intervene in a developer's appeal of the zoning board's denial of its plan to convert a golf course into an office and hotel use. The committee argued that the developer's proposed use would affect residents throughout the township, which gave it a legally enforceable interest. We rejected this argument for the stated reason that "[t]he [c]ommittee's interest is an interest shared by the community, and is not sufficient to satisfy Rule 2327(4)." *Acorn Development Corporation*, 523 A.2d at 438.

Unlike *Larock* and *Acorn Development Corporation*, Proposed Intervenors include the Proposed Individual Intervenors, who own property in the immediate vicinity of the Project. Individual Intervenor Lake's house is located 743 feet from the Project, and Oleniacz and Zaitsoff reside within 0.5 miles of the Project. Zoning Board Decision at 4, 7; R.R. 93a, 96a. We conclude that Proposed Intervenors, by virtue of their status as property owners in the immediate vicinity of the Project, have established a "legally enforceable interest" under Rule 2327(4).

**B. Ground for Denial of Intervention – "Adequate Representation"**

We next consider the trial court's stated reasons for denying intervention under Rule 2329. In doing so, we are mindful that the grant or denial of intervention is a matter committed to the trial court's discretion and will not be set aside on appeal unless there has been an abuse of such discretion. *Wilson v. State Farm Mutual Automobile Insurance Company*, 517 A.2d 944, 947 (Pa. 1986); *Larock*, 740 A.2d at 313.

13

Proposed Intervenors assert, first, that the trial court erred under Rule 2329(2) by holding that their interests were adequately represented by the Oakland Planning Corporation. Proposed Intervenors argue that Developer bears the burden of proof under PA. R.C.P. No. 2329, and it did not present any evidence that Proposed Intervenors' interests continued to be adequately represented by the Oakland Planning Corporation. The trial court used websites of the Oakland Planning Corporation to find, as fact, that some of the Proposed Intervenors were present at the status conference before the trial court and at the subsequent settlement conference. However, websites are not a valid substitute for a record hearing, according to Proposed Intervenors.

Developer counters that Proposed Intervenors chose the Oakland Planning Corporation to represent them in Developer's land use appeal. The relevant inquiry under PA. R.C.P. No. 2329 is not whether Proposed Intervenors agreed with the Oakland Planning Corporation's settlement but, rather, whether its settlement was reasonable for those who had opposed the Project. As Developer observes, the settlement was based, *inter alia*, upon an evaluation of the strength of Developer's legal position. Developer asserts that the trial court appropriately exercised its discretion in denying the intervention petition on this basis.

"The fact that a party of record legally represents the legal interests of a petitioner [for intervention] is not determinative of whether such representation is adequate so as to support the refusal of intervention, where it is also shown that such party is not effectively representing the petitioner's interests." 7 GOODRICH AMRAM 2d Intervention §2329:7 (updated May 2021). In *Larock*, this Court held that objecting residents were not represented by the township or the zoning hearing board and, thus, were entitled to intervene. We explained:

14

> *The [r]esidents' goal is to prohibit the quarry entirely. Conversely, the [z]oning [b]oard's and the [t]ownship's goals are to protect the interests of the [t]ownship*, which may at some point include settlement of the matter that would allow the quarry. Indeed, at oral argument, [c]ounsel for the [t]ownship indicated that it is not necessarily opposed to the quarry. In fact, [c]ounsel alluded to the possibility that the [t]ownship might consider settling the case by permitting the quarry, albeit with conditions. In other words, if it is possibly only a matter of time until the quarry comes in anyway, it would be in the [t]ownship's interest to have an opportunity to impose conditions favorable to the [t]ownship. Since the [t]ownship does not unequivocally share the [r]esidents' interest in totally precluding the quarry, we conclude that the trial court erred when it denied the [r]esidents' petitions to intervene.

*Larock*, 740 A.2d at 314 (emphasis added). In sum, *Larock* established that the interests of homeowners and local government do not necessarily align.

Likewise, in *Keener v. Zoning Hearing Board of Millcreek Township*, 714 A.2d 1120 (Pa. Cmwlth. 1998), we held that a neighbor was entitled to intervention when the township stopped representing its interest in a zoning case involving the development of a quarry. We explained:

> At the outset of this case in 1991, the [t]ownship denied the variance requests of [the developer]. It continued to deny [the developer's] requests until January of 1997, when it entered into a settlement agreement with [the developer]. At that time it was agreed that [the developer] could use the property as a quarry, with some stipulations.
>
> While the [t]ownship may have adequately represented [the neighbor's] interest throughout most of the controversy, when it entered into a settlement agreement with [the developer] to allow the use that [the neighbor] has opposed all along, the [t]ownship no longer represented [the neighbor's] interests.

* * *

15

> Clearly, [the neighbor] has a legally enforceable interest and there is no other party at this point in the controversy that is protecting that interest. [The neighbor] should have the opportunity to voice its concerns about what would happen to the value of the property on which it holds the mortgage, in order to protect its interests.

*Keener*, 714 A.2d at 1123.

In the case *sub judice*, the question is whether the Oakland Planning Corporation represented the interests of Proposed Intervenors. The Oakland Planning Commission revised its legal position in Developer's land use appeal by "backing a settlement deal." C.R., Item 12, at 3, ¶7. The intervention petition also averred that Proposed Intervenors were seeking to "guarantee that [t]he decision of the Zoning Board be upheld." *Id*. at 4, ¶9. Developer does not dispute these points. It argues, nevertheless, that the interests of the Oakland Planning Corporation and Proposed Intervenors are shared, not distinguishable, as in *Keener*.

Because the trial court did not conduct a hearing, there was no factual record to support its conclusion that the Oakland Planning Corporation adequately represented the interests of Proposed Intervenors. We agree that Proposed Intervenors' disagreement with the settlement does not mean that the Oakland Planning Corporation was not representing their interests. The issue of adequate representation cannot be resolved without a hearing. As such, we will vacate the trial court's order and remand the matter for an evidentiary hearing on whether the Oakland Planning Corporation was adequately representing the interests of Proposed Intervenors when it settled the land use appeal brought by Developer.

### C. Ground for Denial of Intervention – "Undue Delay"

We consider, next, whether the trial court erred in concluding that Proposed Intervenors waited too long to file their petition. Proposed Intervenors

argue that Developer presented no evidence that they had either actual or constructive knowledge of the settlement negotiations. They argue that they did not discover the Oakland Planning Corporation's change of position until April 8, 2020. They also argue that there is no evidence that the timing of their intervention petition constituted an "undue delay" or caused "prejudice" for purposes of PA. R.C.P. No. 2329(3). Proposed Intervenors filed the intervention petition two days after learning of the settlement from the newspaper. They assert that the trial court presumed prejudice from mere passage of time, without the support of an evidentiary record.

Developer responds that allowing intervention on the eve of its settlement with the parties that chose to intervene in a timely fashion is highly prejudicial. Proposed Intervenors were "content to observe the proceedings from the sidelines until [Developer] and [the Oakland Planning Corporation] were at the finish line of finalizing a settlement agreement." Developer Brief at 28. In support, Developer relies on *Township of Radnor*, 859 A.2d 1, and *Chairge*, 616 A.2d 1057.

Rule 2327 allows intervention "at any time during the pendency of an action." PA. R.C.P. No. 2327. As Goodrich-Amram states:

> Every delay on the part of the petitioner does not constitute undue delay nor does the fact that intervention is not sought until an advanced stage of the proceedings prove that there has been undue delay. It must be remembered that [] Rule [2327] expressly permits intervention "at any time during the pendency of an action."

7 GOODRICH AMRAM 2d, Intervention, §2329:8 (2021), Amram Commentary.

17

In *Verone v. Zoning Hearing Board of Ridley Park Borough* (Pa. Cmwlth., No. 1130 C.D. 2010, filed April 13, 2011) (unreported),[6] the trial court denied an intervention petition on the ground that it was unduly delayed under PA. R.C.P. No. 2329(3). The trial court did so without a hearing. On appeal, this Court vacated the trial court's order and remanded the matter to the trial court to conduct a hearing. We recognized that there may be times when intervention may be denied without a hearing, as in *Santangelo Hauling*, where undue delay was apparent from the face of the intervention petition, which was filed one year after the underlying matter was adjudicated. However, in *Verone*, the intervention petition was filed before a decision on the merits was reached. "Unless on the face of the petition intervention cannot be granted without an abuse of discretion, PA. R.C.P. No. 2329(3) requires a hearing to adduce facts why the petition was filed 10 months after [the zoning appeal]." *Id.*

By contrast, in *Township of Radnor*, 859 A.2d 1, this Court affirmed the trial court's denial of intervention because the petitioners waited until the trial court had approved the settlement between the township and developers to file their petition. At the evidentiary hearing on the petition to intervene, testimony was presented that the putative intervenors were aware of the settlement negotiations and invited to participate, but they declined to do so. Further, the putative intervenors were aware of the provisions of the settlement agreement before it was adopted by the township but did not petition to intervene until after the trial court approved the settlement.

---

[6] An unreported panel decision of this Court issued after January 15, 2008, may be cited "for its persuasive value, but not as binding precedent." Section 414(a) of the Commonwealth Court Internal Operating Procedures, 210 Pa. Code §69.414(a).

18

*Chairge*, 616 A.2d 1057, also concerned a denial of intervention under Rule 2329(3), which was filed after the trial court reversed a decision of a zoning hearing board. The putative intervenor did not allege any extraordinary circumstances for the delay in requesting intervention. This Court affirmed the trial court and held that the trial court did not have to hold an evidentiary hearing because the undue delay was apparent from the face of the intervention petition. *Id*. at 1060.

*Township of Radnor* and *Chairge* are distinguishable. Here, Proposed Intervenors filed their petition to intervene while Developer's zoning appeal was still pending. The trial court did not approve the settlement until January 4, 2021, nine months after Proposed Intervenors filed their petition. In its 1925(a) opinion, the trial court noted that Proposed Intervenors had knowledge of the settlement negotiations, and some of them attended the settlement meeting on February 12, 2020. However, the intervention petition alleges that Proposed Intervenors knew nothing about the settlement negotiations until April 8, 2020, when the local newspaper published an article about the settlement proposal. The trial court found there was prejudice, but this is not obvious. Lacking here is an evidentiary record on the disputed factual issue of whether Proposed Intervenors knew, or could have easily learned, the status of settlement discussions between the Oakland Planning Corporation, the City, and Developer, and whether intervention was, thus, unduly delayed and prejudicial to the other parties.

Rule 2327 allows intervention "[*a*]*t any time during the pendency of an action.*" PA. R.C.P. No. 2327 (emphasis added). However, undue delay constitutes grounds to deny intervention even during the pendency of an action. PA. R.C.P. No. 2329(3). Again, we will vacate the trial court's order and remand the matter to the trial court to conduct an evidentiary hearing on whether Proposed Intervenors'

petition was unduly delayed to the prejudice of the parties who intervened promptly in Developer's appeal.

## Conclusion

For the foregoing reasons, we deny Developer's motion to quash. The trial court's order denying the intervention petition is interlocutory but appealable as a collateral order under PA. R.A.P. 313. We vacate the trial court's June 10, 2020, order[7] and remand the matter to the trial court to conduct an evidentiary hearing on whether Proposed Intervenors were adequately represented by the Oakland Planning

---

[7] Generally, "[e]xcept as otherwise prescribed by these rules, after an appeal is taken …, the trial court … may no longer proceed further in the matter." PA. R.A.P. 1701(a). Under PA. R.A.P. 1701(b)(6) and (c), however, when a party has appealed a collateral order, "the trial court retains jurisdiction to continue to act on those parts of the case that are unrelated to the collateral matter (that is, the 'particular item, claim or assessment adjudged') that is the subject of the appeal." *Commonwealth v. McClure*, 172 A.3d 668, 698-99 (Pa. Super. 2017) (citing PA. R.A.P. 1701(c)).

> As the Supreme Court explained in *Rosen v. Rosen*, 549 A.2d 561, 564 (Pa. 1988), "[t]he purpose of Rule 1701(c) is to prevent appeals of collateral issues from delaying the resolution of the basic issues where the proceeding below can continue without prejudicing the rights of the party seeking the interim review." Whether and to what extent a trial court may proceed under Rule 1701(c) depends on "whether the orders on appeal were relevant to or at issue in the proceedings continuing in the trial court." To the extent the matters remaining in the trial court are not dependent on resolution of the issue on appeal, the trial court may continue to address them. But when the remaining proceedings in the trial court are "tightly intertwined" with the collateral matter that is on appeal, the trial court may not take any action on those intertwined matters until the appeal is concluded.

*McClure*, 172 A.3d at 699 (internal quotations omitted).

> Here, on January 4, 2021, while Proposed Intervenors' appeal of the trial court's denial of intervention was still pending, the trial court adjudicated the merits of Developer's land use appeal by approving the settlement and marking the case closed. Proposed Intervenors' appeal was "relevant to" and "tightly intertwined" with Developer's land use appeal "continuing in the trial court." *McClure*, 172 A. 3d at 699. Should Proposed Intervenors be permitted to intervene in Developer's land use appeal, they would defend the decision of the Zoning Board. Therefore, the trial court did not have jurisdiction to proceed further in the matter, including the entry of an order modifying the Zoning Board's decision and closing the case, until Proposed Intervenors' appeal had concluded. The trial court's January 4, 2021, order was thus a nullity under PA. R.A.P. 1701.

Corporation in Developer's land use appeal and whether they unduly delayed in seeking intervention under PA. R.C.P. No. 2329(3). An evidentiary hearing is required under PA. R.C.P. No. 2329 unless it is apparent on the face of the petition that the requirements for intervention have not been met, which is not the case here.

_____
MARY HANNAH LEAVITT, President Judge Emerita

Judge McCullough did not participate in the decision in this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Wexford Science and Technology, LLC :
                                            :
        v.                      :     No. 694 C.D. 2020
                                              :
The City of Pittsburgh Zoning Board of :
Adjustment                             :
                                              :
Appeal of: Coltart Area Residents :
Association, South Oakland :
Neighborhood Group, Oakliffe :
Community Organization, :
Marjory Lake, Mark Oleniacz and :
Elena Zaitsoff :

## **O R D E R**

AND NOW, this 23rd day of July, 2021, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter, dated June 10, 2020, is VACATED. The matter is REMANDED to the trial court for a hearing consistent with this opinion. Wexford Science and Technology, LLC's motion to quash the appeal is DENIED.

      Jurisdiction relinquished.

 

_____
MARY HANNAH LEAVITT, President Judge Emerita